

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Mr. Cavness:

Opinion No. O-7256

Re: Effectiveness of constitu-
tional amendment of Section
11, Article IV adopted
November 3, 1936; present
effect of Article 6203, as
amended; and other questions
re parole laws.

Your recent letter requests an opinion of this Department upon the following questions:

"Kindly refer to your Opinion No. O-7141, released to me under date of May 9th, 1946. Before concluding our present audit and survey of the Board of Pardons and Paroles it seems necessary that we ask a few more questions, because of the uncertainty existing in our minds as to just what is the law on several points. Accordingly we shall greatly appreciate your opinion on the following:

"1. Has the Constitutional Amendment adopted November 3rd, 1936 (proposed in S. J. R. 26 of the 44th Legislature) ever been put into full legal effect? If not fully, then to what extent if any?

"2. Is Art. 6203 R. C. S., (as now delineated in Vernon's Annotated Civil Statutes) still valid and existing law of our State, regardless of the answer to Question No. 1 above? If any Sections or parts of this Article have been repealed or amended, please say which and tell us what is the law in place of any that have been repealed or amended.

"3. If Section 6 of Art. 6203 is in effect as

it now reads, by what provision of the
law could the Board of Pardons and Paroles
recommend release on parole for any person
who had not served as much as one-third of
his term?  If this same Section 6 is in
effect, by what legal provision could this
Board recommend release on parole for any
person who has ever before 'been imprisoned
in a State Penitentiary in this or any
other state or nation'?

"4.   If Section 18 of Art. 6203 is in effect,
does it mean that the Board of Pardons and
Paroles could not recommend for release on
parole any prisoner under sentence in ex-
cess of twenty-five years until after said
prisoner had served nineteen calendar years?

"5.   In the event a prisoner on parole is
charged with a new offense and is held in
a county or city jail (and is considered by
the Prison authorities and/or the Board of
Pardons and Paroles to have violated the
terms or requirements of his parole), who
has priority over his custody -- the county
or city peace officers or the Prison author-
ities?

"6.   What is the legal status, if any, of the
County Voluntary Parole Boards, and what
are the legal functions and duties of their
members?"

Section 11 of Article IV of the Constitution of 1876 reads,
regarding the Governor's powers:

"In all criminal cases, except treason and impeach-
ment, he shall have power after conviction, to grant
reprieves, commutations of punishment and pardons; and
under such rules as the Legislature may prescribe, he
shall have power to remit fines and forfeitures.  With
the advice and consent of the Senate, he may grant
pardons in cases of treason; and to this end he may
respite a sentence therefor, until the close of the
succeeding session of the Legislature; provided, that
in all cases of remissions of fines and forfeitures, or
grants of reprieve, commutation of punishment or pardon,

he shall file in the office of the Secretary of State his reasons therefor."

By amendment adopted at the general election held November 3, 1936, Section 11 was changed to read as follows:

"There is hereby created a Board of Pardons and Paroles, to be composed of three members, who shall have been resident citizens of the State of Texas for a period of not less than two years immediately preceding such appointment, each of whom shall hold office for a term of six years; provided that of the members of the first board appointed, one shall serve for two years, one for four years and one for six years from the first day of February, 1937, and they shall cast lots for their respective terms. One member of said Board shall be appointed by the Governor, one member by the Chief Justice of the Supreme Court of the State of Texas, and one member by the presiding Justice of the Court of Criminal Appeals; the appointments of all members of said Board shall be made with the advice and consent of two-thirds of the Senate present. Each vacancy shall be filled by the respective appointing power that theretofore made the appointment to such position and the appointive powers shall have the authority to make recess appointments until the convening of the Senate.

"In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have the power to revoke paroles and conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

"The Legislature shall have power to regulate

procedure before the Board of Pardons and Paroles and
shall require it to keep record of its actions and the
reasons therefor, and shall have authority to enact
parole laws."

The amendment quoted above became effective November 20, 1936;
under its own terms, however, it did not become operative until February 1,
1937. It is now, and since its operative date has been, the supreme law of
the State upon the subject embraced therein. Under the amendment the Legis-
lature is authorized "to enact parole laws", and in cases of treason, execu-
tive clemency is made dependent upon the advice and consent of the Legislature.
Additionally, the Legislature is authorized to prescribe rules governing exercise
of the power to remit fines and forfeitures; it also may regulate procedure before
the Board of Pardons and Paroles, and require it to keep a record of its actions
and the reasons therefor. These powers reserved to the Legislature obviously
depend upon affirmative action by that body to make its will effectual; but the
amendment is self-executing and independent of legislative action, insofar as
composition of the Board of Pardons and Paroles is concerned, and insofar as
the clemency powers of the Governor and the Board are concerned.

## Questions 2, 3 & 4 Inclusive

Your second, third and fourth questions are interrelated; for economy
of treatment they will be considered together.

Article 6203, Revised Statutes, 1925, was amended by Chapter 45,
Acts 1st C. S. 41st Legislature; Section 6 of the amended act was again amended
by Chapter 9, Acts 4th C. S. 41st Legislature, and Sections 3 and 8 were amended
by Chapter 11, Acts 5th C. S. 41st Legislature. At the time of adoption of the
1936 amendment to section 11, Article IV, supra, the act comprised twenty-one
sections, deriving from the enactments cited. The act provided for establishment
of a Board to be known as the "Board of Pardons and Paroles", composed of three
members appointed by the Governor, and prescribed the duties of the Board. In
brief, these duties were advisory to the Governor in the exercise of the powers
of executive clemency which he exclusively possessed prior to the 1936 amendment.
The act made it the duty of the Board to compile information regarding prisoners
received by the Prison System, provided for its review of the records of the
prisoners, and made it the duty of the Board to recommend to the Governor the
release of prisoners on "parole" where the Board was of the opinion that there
was reasonable probability that if the prisoner were released he would live and
remain at liberty without violating the law, and that his release would not be
incompatible with the welfare of society, etc. (Sections 7-8). The power of
the Board was strictly limited to the making of recommendations to the Governor;
its recommendations were made effectual only if the Governor, in the exercise
of his clemency powers, should see fit to act in accord with the advice of the
Board. (Section 20, Article 6203).

The act prescribed certain limitations upon the powers of the Board created thereby: e.g., in Section 6, (subject of your third inquiry) it was provided that a prisoner should not be recommended for "parole" if sentenced under indeterminate sentence, until he should have served a period equal to the minimum sentence imposed upon him for the crime; or if he were sentenced to a definite term, until he should have served at least one-third of the term or terms imposed upon him. Similarly, under section 18, it was provided that prisoners sentenced after date of the act to terms in excess of twenty-five years (including life sentences) should be eligible to parole only after service of nineteen calendar years, with a clear prison record.

It is clear that had the Legislature sought thus to limit the powers of clemency vested solely in the Governor prior to the 1936 amendment, the limitations would have been invalid. Ex. p. Miers, (Tex. Cr.) 64 S.W.2d 778; Ex. p. Nelson, 209 S.W. 148; Snodgrass v. State, 67 Tex. Cr. 615, 150 S.W. 162, 150 S.W. 178. The Legislature, in recognition of this lack of power, expressly provided that the Act should not be construed as in any way attempting to limit or prevent "the exercise by the Governor of this State of powers of executive clemency vested in him by the Constitution of this State". (Section 20, Article 6203). As to the statutory board, however, the legislature could limit or curtain the Board's powers of recommendation as it saw fit, for the Board had only such authority as the Legislature determined it should have.

This was the condition of the laws when, in 1936, Section 11 of Article IV was amended; your inquiries lead to consideration of the effect of the Constitutional amendment upon the statutory provisions contained in Article 6203.

The 1936 amendment wrought material change in the structure of government whereby the clemency powers of the sovereign are exercised in this State. It established, by its own force, a Board of Pardons and Paroles, vested in that Board the power to make recommendations to the Governor relative to clemency after conviction in all criminal cases except treason and impeachment, and made the power of the Governor to grant clemency in such cases conditional upon the affirmative recommendation of that Board.

We think that the establishment by Constitutional provision, of the Board of Pardons and Paroles having the powers enumerated, with provision for the three members of the Board to be appointed one by the Chief Justice of the Supreme Court, one by the Presiding Justice of the Court of Criminal Appeals, and one by the Governor, was inconsistent with and therefore abolished the statutory authority for appointment by the Governor of a different body, whose duties similarly related to the making of recommendations to the Governor in clemency matters. The contemporaneous construction of the 1936 amendment, and the practical construction unbroken since that time, support this conclusion.

It has been suggested, however, that although the statutes were

superseded insofar as composition and make-up of the Board to exercise the powers of recommendation in matters of executive clemency are concerned, nevertheless the remaining provisions of Article 6203 are still effective, and are applicable to the Constitutional Board of Pardons and Paroles.

The Legislature has not assumed since the 1936 amendment, to enact any law relating either to the subject of pardons or of paroles. It has not assumed to say that the Constitutional Board shall be subjected to the requirements it imposed upon the Statutory Board; there has been no transfer of powers or duties by statutory enactment since 1936. To our minds, its failure to act is indicative that the Legislature had no idea that the Constitutional Board should wear the legal clothing tailored for the statutory Board which died concurrently with the birth of the 1936 amendment.

Inapplicability of the statutory provisions to the Constitutional Board of Pardons and Paroles is apparent when tested by validity of the prohibitions and restrictions imposed by the statute. Your inquiries relative to Sections 6 and 18 of the act directly raise the question. As we pointed out above, the Legislature could not have limited the powers of clemency vested in the Governor prior to the 1936 amendment to extension of clemency only in those cases where the convict had served a specified minimum period of time; his power attached at time of <u>conviction</u> of the person involved. <u>Ex parte Miers</u>, <u>supra</u>; <u>Snodgrass v. State</u>, <u>supra</u>. By force of the same authority, we say that the Legislature has no more power to limit or restrict the joint powers of clemency divided under the 1936 amendment between the Board of Pardons and Paroles established thereby, and the Governor. If the Legislature can prohibit the Constitutional Board from recommending a prisoner for clemency until he shall have served a minimum period specified by statute, it can render nugatory the Constitutional mandate that the power of the Governor shall attach "after conviction", as the power of the Governor is made dependent upon an affirmative recommendation of clemency by the Constitutional Board. The power of the Governor to grant clemency in the cases specified attaches "after conviction"; we think that the power of recommendation vested in the Board of Pardons and Paroles established by the amendment attaches concurrently. See, <u>Snodgrass v. State</u>, <u>supra</u>.

Nor can the validity of the restrictions contained in Sections 6 and 18 of Article 6203 be sustained as applicable to the Board of Pardons and Paroles established by the Constitution, upon the theory that the statute is a "parole law" within the meaning of the 1936 amendment to Section 11, Article IV.

Article 6203 is an enactment which deals with the powers of <u>pardon</u> (Section 20 expressly so states); the clemency authorized to be extended under its provisions is that of <u>conditional pardon</u>. See, <u>Ex parte Nelson</u>, <u>supra</u>; <u>Ex parte Gore</u>, (Tex. Cr.) 4 S.W.2d 38; <u>Snodgrass v. State</u>, <u>supra</u>. The fact that the term "parole" is used in the statute does not change the character of

the clemency extended, nor vary the powers called into exercise thereby. Ex parte Nelson, supra; Ex parte Gore, supra; Snodgrass v. State, supra.

In the Snodgrass case (150 S.W. 162, 176) the Court in discussing the Constitutional provisions relative to executive clemency which were in force prior to the 1936 amendment, said:

> "What is a 'pardon'? That term has been defined and has a well-understood meaning. In Carr v. State, supra, this Court held: 'A pardon is a remission of guilt. 1 Bish. Cr. Law, § 898. It is full, partial, or conditional. Full, when it freely and unconditionally absolves the party from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided. 1 Bish. Cr. Law, § 916. Partial, where it remits only a portion of the punishment, or absolves from only a portion of the legal consequences of the crime. Conditional, where it does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires. 1 Bish. Cr. Law, § 914.' . . . Could the meaning of the act of the Thirty-second Legislature be more clearly expressed, and what does this act of the Legislature attempt or propose to do but exempt a man from the punishment assessed against him for a crime he has committed, upon the sole ground that he go and sin no more? It has no other object, purpose or effect, and by giving it a different name or designation does not change its legal meaning or effect, . . ."

It thus was held in the Snodgrass case, that the law attempting to confer upon the judges of the district courts in certain felony cases, the discretionary power to impose suspended sentences, conditioned that the person convicted should not within a period double the term of imprisonment assessed be convicted of any other felony, was unconstitutional and void.

In the Nelson case, the Court had under consideration the meaning and effect of Articles 1057a and 1057b, Vern. Ann. Code of Criminal Procedure, 1922 Supp. (Acts 1911, p. 64). These provisions were carried forward without material change as Articles 959 and 960, Code of Criminal Procedure, 1925. Article 1057a, supra, provided:

> "Meritorious prisoners who are now or may hereafter be in prison under a sentence to penal servitude may be allowed to go upon parole, outside of the building and jurisdiction of the penitentiary authorities subject to the provisions of this act, and to such regulations and conditions as may

be made by the board of prison commissioners, with the approval of the Governor of this state, and such parole shall be made only by the governor, or with his approval."

Article 1057b, supra, provided that paroled prisoners should remain under custody and control of the Board of Prison Commissioners, subject to retaking by the Board as under the original sentence, "but such retaking shall be at the direction of the Governor".

The Court, speaking through Justice Morrow, said:

"Both in the passage of the law mentioned and the making of the proclamation referred to there, is contained a recognition of the fact that the abridgment and modification of the terms of imprisonment contemplated are referable to the authority to exercise executive clemency which is conferred upon the Governor of the state in the constitutional provision mentioned. . . .

"It is not within the power of the Legislature to enlarge or to restrict the pardoning power vested in the executive, nor to impose conditions upon which it may be exercised, nor requirements touching the conditions precedent or subsequent which are to be imposed by the executive upon the convict, and the acts mentioned do not purport to do so. . . .

"Our view of the law as it relates to the instant case is that such privileges as the relator enjoys under the facts stated do not arise from the parole law mentioned, but rest upon the power of executive clemency vested in the Governor; that at the time of his arrest he was not in the penitentiary, nor did there exist in the penitentiary authorities any right or power to subject him to imprisonment, unless, as a condition precedent therefor, the Governor so directed. Such liberty as he enjoys under the parole proclamation is referable alone to the pardoning power, and the proclamation is to be classified as a conditional pardon."

Article 6203, similarly involving the discretionary power whether a person convicted of crime by a jury and assessed a punishment therefor, shall or shall not suffer that punishment, deals expressly with the pardoning powers. (Section 20). To the extent that it attempts to limit or curtail the exercise of the clemency powers which the Constitution confers upon the governor or upon the Board of Pardons and Paroles established by the 1936 amendment, the act is

invalid. Even if the Legislature had enacted them since 1936, Sections 6 and 18 of Article 6203 would have to fall. Ex p. Nelson, supra; Snodgrass v. State, supra. We therefore cannot ascribe to the Legislature the intention that these provisions of the former act should be imposed upon the Constitutional Board of Pardons and Paroles.

When the entire act is read, it will be ascertained that Article 6203 is a single statute, intended to accomplish a single purpose. The act was designed to provide a Board to advise, but not to limit or control, the Governor in the exercise of the powers of clemency which he then possessed exclusively. The 1936 amendment substituted a new system for exercise of the clemency powers; Article 6203 does not fit into the constitutional structure of the government since the amendment. The act was designed to prescribe the powers and duties of a Board established by statute. On the other hand, the Constitutional amendment of 1936 is the charter of the clemency powers of the Board of Pardons and Paroles established thereby; one need look no further for the source and extent of its powers in matters of pardon, commutation and reprieve.

We think that Article 6203 was outmoded and superseded in all its parts by the change in governmental structure effected by the 1936 amendment. It remains effective only insofar as its terms and limitations were incorporated as conditions into pardons granted prior to February 1, 1937. Ex parte Nelson, 84 Tex. Cr. 570, 209 S.W. 148, 150; Ex parte Redwine, 236 S.W. 96, 98, 91 Tex. Cr. 83.

### Question 5

Your fifth question is rather abstract, but we think the principles hereinafter discussed govern determination of the matters raised thereby.

In the first place, as we have above stated, the "paroles" granted under the laws heretofore existing in this State, are in legal effect conditional pardons. Ex p. Nelson, supra; Ex p. Gore, supra. Such privileges as are enjoyed by the persons to whom they are issued, are referable to "parole" proclamation, considered as a conditional pardon. The conditions attached in the granting of a pardon are valid, unless illegal or immoral, and measure the rights and privileges of the person accepting the same. Ex p. Redwine, supra; Ex p. Frazier, 91 Tex. Cr. 475, 239 S.W. 972.

An unconditional pardon is non-revocable, except for fraud in procurement, (Ex. p. Rios, 72 Tex. Cr. 587, 162 S.W. 891), and a conditional pardon is as absolute an act upon the conditions named therein as is an unconditional pardon. Ibid. Until a conditional pardon is revoked in accordance with the conditions stipulated therein, the penitentiary authorities have no right to custody of the person to whom it was issued. See Ex p. Nelson, supra. Conversely, when a conditional pardon is legally revoked, it thereupon ceases

to exist, and from that moment on the penitentiary officers have a right to custody of the person involved, for the remainder of the term he must serve for the offense covered by the expired pardon. Ex p. Redwine, supra; Ex p. Frazier, supra.

The fact that the person was arrested and held by local authorities for a criminal offense, prior to revocation of the conditional pardon, gives them no right to retain custody after legal termination of the pardon. The laws of this state do not contemplate that a person who by force of those laws is required to be in the penitentiary, shall be withheld from the custody of the penitentiary authorities for any reason, or by any other officials.

We answer your fifth question, therefore, by advising that upon legal termination of a conditional pardon, whereunder a person was released from the penitentiary upon stated conditions, the officials of the penitentiary are entitled to immediate custody of the person; and that local authorities of this state can not refuse to deliver him on the ground that he is charged with another crime.

## Question 6

County Voluntary Parole Boards have no legal standing whatever. They are what the name implies -- wholly voluntary on the part of officials and private citizens interested in the subject of paroles. Having no legal status, they have no official function or power whatever. Their voluntary reports or advice are no doubt valuable, coming as they do from individuals who take a public interest in such matters, but nevertheless they are persuasive only, and have no force in the legal scheme of pardons and paroles.

Yours very truly

ATTORNEY GENERAL OF TEXAS

/s/Gaynor Kendall

By    Gaynor Kendall
      Assistant

GK:ms

APPROVED JUL 30, 1946

/s/Carlos C. Ashley

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE